IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| United States of America,          ) | |
| )                                     | |
| Plaintiff,          ) | **ORDER GRANTING IN PART AND DENYING** |
| )                                     | **IN PART THE MOTION TO QUASH** |
| vs.          ) | |
| )                                     | Case No. 1:22-cr-081 |
| Walter William Cartwright, III,    ) | |
| )                                     | |
| Defendant.          ) | |

Before the court is a Motion to Quash Subpoenas filed by the United States on December 21, 2023. (Doc. No. 98). The United States seeks to quash subpoenas duces tecum served by Defendant Walter William Cartwright, III ("Cartwright") on third parties, i.e., Ward County State's Attorney Roza Larson, the Ward County Narcotics Task Force ("Task Force"), and Al Schmidt, Chief of Police for Berthhold and Carpio, North Dakota. Judge Traynor referred this motion to the undersigned. For the reasons that follow, the undersigned grants in part and denies in part the United States' motion.

**I.     BACKGROUND**

Cartwright is charged by way of Indictment in the instant case with one offense: possession of a firearm by a convicted felon in violation of 18 U.S.C. 922(g)(1) and 924(a)(2). (Doc. No. 1). The offense is alleged to have occurred on August 7, 2019. (Id.). Cartwright's trial is scheduled for January 9, 2024. (Doc. No. 76).

Cartwright's alleged conduct in the instant case had previously given rise to his prosecution in state district court for a violation of state law prohibiting felons from possessing firearms. (Doc. No. 107 at pp. 2-3). His state case was dismissed by the state court prior to the initiation of the

1

instant case. (Id. at p. 4).

On December 14, 2023, Defendant served a subpoenas duces tecum on Ward County State's Attorney Larson, ordering her to produce:

> 1) [Her] complete file re: Walter Cartwright's state charges for felon in possession of a firearm; 2) any and all emails or other communications or correspondence re: The state or the bringing of a federal charge against Cartwright with any federal prosecutor, FBI agent, ATF agent or any other federal agent or personnel.

(Doc. No. 98-1). He also served a subpoena duces tecum on the Task Force , ordering it to produce:

> 1) any and all files or documents including emails relating to Walter Cartwright III, and 2) any and all files or documents in which Al Schmidt, Chief of Police for Berthold and Carpio, was authorized to use Walter Cartwright III as a confidential informant or to arrange or conduct drug buys, and 3) any information indicating knowledge of such use of Cartwright.

(Doc. No. 98-2). Finally, he served a subpoena duces tecum on Chief Al Schmidt, ordering him to produce:

> 1) any and all files, documents, emails, texts or Facebook messages or other information relating to Walter Cartwright III, 2) any information of any type in which you were authorized to use Walter Cartwright to make drug buys or obtain drugs as a confidential informant, 3) any documents, emails or other communications relating to the bringing of federal charges against Cartwright with any federal prosecutor, FBI agent, ATF agent, or any other federal agent or personnel.

(Doc. No. 98-3).

On December 20, 2023, the United States filed a motion to quash the aforementioned subpoenas duces tecum. (Doc. No. 98). It asserts that Defendant is impermissibly using subpoenas to obtain additional discovery as opposed to evidence for use at trial. It further asserts that the subpoenas do not satisfy the Nixon standard as they do not request information with adequate specificity and that Defendant is impermissibly casting an overly broad net in the hope that he may "catch a fish."

2

On December 20, 2023, the undersigned issued an order that (1) stayed compliance with the subpoenas pending resolution of the United States' motion, and (2) established an expedited briefing schedule. (Doc. No. 99).

On December 21, 2023, Defendant filed a Motion to Dismiss in which he asserted, among other things, a claim of prosecutorial misconduct. (Doc No. 106). He also filed a Notice of Public Authority Defense and a response to the United States' motion to quash. (Doc. Nos. 112 and 110).

In his response to the United States motion, Defendant stressed that he had filed Notice of Public-Authority Defense pursuant to Fed. R. Crim. P. 12.3. (Doc. No. 110). Next, he asserted that the subpoenaed documents are relevant and admissible as they bear upon this defense and will establish he was a confidential informant for Chief Schmidt, "set[ ] up a drug deal for [Chief] Schmidt," and reasonably believed he was assisting law enforcement when he came into possession of the firearm he is now is charged with unlawfully possessing. (Id.). Third, he asserts that the specificity of the subpoenaed documents is self-evident. (Id.). Finally, to assuage any confidentiality concerns, he proposes that the subpoenaed documents can be inspected the under the supervision of the Court.

On December 27, 2023, the United States filed its reply. (Doc. No. 113). It clarified that it does not take issue with the entirety of the subpoenas served on the Task Force and Chief Schmidt. (Id.). As for the subpoena served on State's Attorney Larson, it reiterated its position that the subpoenaed documents had not been requested with adequate specificity. (Id.). It further asserted that portions of the subpoena seek privileged information or attorney work product and should therefore be quashed. (Id.).

## II.     STANDARD

Rule 17(c) of the Federal Rules of Criminal Procedure provides that a "subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. Fed. R. Crim. P. 17(c)(1).

Rule 17(c) was not intended to serve as a discovery device for criminal cases. United States v. Nixon, 418 U.S. 683, 698 (1974); see also United States v. Shanahan, 252 F.R.D. 536, 539 (E.D. Mo. 2008) ("Rule 17(c) is more narrow than the corresponding rules of civil procedure, which permit broad discovery."). Rather, Rule 17(c) seeks to expedite a trial by providing a time and place before trial for the inspection of subpoenaed materials. Id. at 698–99; see also United States v. Bueno, 443 F.3d 1017, 1026 (8th Cir. 2006).

The party seeking production under Rule 17(c) must show the subpoenaed documents are: (1) relevant; (2) admissible; and (3) requested with adequate specificity (collectively "the Nixon factors"). Nixon, 418 U.S. at 699-700; see also United States v. Johnson, No. 14-CR-00412-TEH, 2014 WL 6068089, at *2 (N.D. Cal. Nov. 13, 2014) ("This standard is the same whether the subpoenaed party is the government or a third party."). "The specificity and relevance requirements demand more than the title of a document and conjecture concerning its contents." Shanahan, 252 F.R.D. 536, 540 (E.D. Mo. 2008); see also United States v. Bradford, 806 F.3d 1151, 1155 (8th Cir. 2015) ("[A] subpoena should not issue based upon a party's mere hope that it will turn up favorable evidence." (internal quotation marks omitted)).

In addition to the Nixon factors, the court must consider a number of additional factors, such as whether:

>(1) the materials could be procured through other means, before trial, by the exercise of due diligence; (2) the party cannot adequately prepare for trial without advance production of the documents, and the failure to obtain the documents may tend to unreasonably delay the trial; and (3) the request for the materials is made in good faith and not as a general "fishing expedition."

Nixon, 418 U.S. at 699–700. Id. at 699-700.

"A court may quash or modify a subpoena for the production of documents, if producing the documents would be unreasonable or oppressive or if the subpoena calls for privileged matter." United States v. Dornsbach, No. 22-CR-00048, 2023 WL 2480976, at *3 (D. Minn. Mar. 13, 2023) (citing Fed. R. Crim. 17(c)(2)); see also United States v. Jewell, No. 4:07–CR–0103 JLH, 2008 WL 3871736, at *2 (E.D. Ark. Aug. 15, 2008) ("There is no clear standard for determining whether compliance with a subpoena is 'unreasonable and oppressive,' and such a determination is left to the discretion of the trial court.").

### III. DISCUSSION

#### A. Subpoena Duces Tecum served on State's Attorney Larson

##### 1. Part One - Request for the Entire File

As noted above, United States asserts that Part One of the subpoena, which demands production of the "complete file re: Walter Cartwright's state charges for felon in possession of a firearm," does not satisfy the Nixon standard, to wit: it lacks specificity and has the appearance of a fishing expedition. Defendant counters that, "[as] to specificity, as can be seen from the United States motion that there is substantial specificity as to what is being requested." (Doc. No. 110).

The undersigned finds that Cartwight has failed to establish with sufficient specificity the documents to be produced. By requesting State's Attorney Larson's entire file, Defendant has cast a very large net. Defendant's assertion the specificity of his request is self-evident is not helpful.

5

The law is clear: a Rule 17(c) subpoena is not to be used as a discovery device and the court will not allow it to be used to conduct a fishing expedition.

As the request lacks specificity, the court finds that compliance with it is oppressive. If it is Defendant's intent to obtain documentation regarding his purported use as a confidential informant, such documentation is available from other sources, i.e., the Task Force and Chief Schmidt. There are also the text messages, emails, and Facebook messages between Defendant and Sheriff Smith that have been referenced by Defendant in his Motion to Dismiss and in response to the instant motion. Defendant presumably has access to these communications as he was a participant in them and otherwise expresses knowledge of their contents. (Doc. No. 110, p. 2 ("He texted emails and Facebook messaging will indicate what information from Walter to officer Al Schmidt and what directions Walter received from officer out Schmidt." (errors in original)). Part One of the subpoena is therefore quashed.

> **2.    Part Two - Request for all Communications Between State's Attorney Larson and Federal Prosecutors/Federal Law Enforcement Agencies Regarding the Initiation of the Instant Action**

Defendant maintains that these communications are relevant and admissible and they bear upon his claim of prosecutorial misconduct by state and federal prosecutors, which he fleshes out as follows in his Motion to Dismiss:

> 115. The presentation of this offense by the state prosecutor and/or state law enforcement agents to the federal government was done with malice and for the purpose of the state prosecution protecting itself from litigation.
>
> 116. The federal prosecutors – in order to assist their fellow state prosecutors from being sued – decided to accept the case and, eventually, presented to the grand jury.
>
> * * *
>
> [The] only reason the federal case was brought is because the Carpio police and

> Ward County are "covering their butts." Under North Dakota law, a firearm must be operational. The firearm at issue was not operational. Walter was nonetheless charged, improperly, by the state, and after Walter was in jail for many many months, the state entities finally had the gun checked and determined it was inoperable, and dropped the charges specifically because of that fact. Walter is convinced that the state as the federal prosecutor or some other federal entity to bring charges in federal court to protect the Carpio, Ward County, and the state for its mistake in state court for bringing an improper charge, not determining before charging Walter that the gun was inoperable, and not checking if it was operable until months later, right before the trial.

(Doc. No. 107 at pp. 7 and 8).

Not surprisingly, the United States takes exception to Defendant's claim of prosecutorial misconduct. In the context of the instant motion, it asserts that the subpoena should be quashed to the extent that it seeks privileged information or attorney work product.

For support, the United States largely relies on the Kansas district court's analysis in United States v. Morales, No. 15-20020-09/10, 2016 WL 4069655, at *1 (D. Kan. July 29, 2016). There, the defendant was charged federally after his state case was aborted. He filed a discovery motion pursuant to Fed. R. Crim P. 16, seeking production of the following from the United States:

1. Copies of the following documents in the government's possession, custody and control:

    a. If approval before or after this prosecution from the appropriate Assistant Attorney General was sought, the completed Dual Prosecution (Petite Policy) form, USAM 9–2.031 requesting this prosecution

    b. If no approval from the appropriate Assistant Attorney General was sought, all Justice Department correspondence, memoranda, notes, emails, and all other records con[c]erning commencement of this prosecution in view of defendant's prior Clark County, Kansas prosecution.

    c. All motions to dismiss pursuant to the Petite Policy the Justice Department filed within the five (5) years next preceding this request.

        i. All court orders addressing said motions

>    d. All motions and requests to dismiss pursuant to the Petite policy defendants filed in federal cases within the five (5) years next preceding this request
>
>    >    i. All documents, including memoranda, notes and emails relating to the motions and requests reflecting the Justice Department's considerations thereof and responses thereto.
>    >
>    >    ii. All court orders addressing said defense motions and requests to dismiss
>
>    2. Facts supporting a substantial federal interest in this second prosecution.
>
>    3. Facts disclosing that the prior Clark County, Kansas prosecution left that interest demonstrably unvindicated.

Id. The court denied his motion on reconsideration, reasoning:

> The documents, memoranda, notes, and emails requested in 1(a), 1(b), and 1(d)(i) would contain the opinions and mental processes of attorneys and agents made in anticipation of litigation. Thus, the work-product doctrine applies to these documents. The "deliberative process" privilege also applies, as these documents would contain advisory opinions, recommendations, and deliberations by government agencies. These documents also are not discoverable under Rule 16(a)(2) because the documents were prepared by a government attorney or agent in connection with the investigation or prosecution of this case. The "deliberative process" privilege and Rule 16(a)(2) would not prohibit production of the facts described in paragraphs 2 and 3. However, disclosing these facts would likely reveal the mental processes and opinions of government agents and attorneys prepared in anticipation of litigation. Thus, work product privilege applies to these facts.

Id. at *3.

The undersigned appreciates that the discovery request in Morales is distinguishable as Cartwright is not endeavoring to obtain materials from United States pursuant Rule 16, but rather from third-parties about their communication with the United States pursuant to Rule 17. However, the court is not convinced that this distinction makes a substantive difference on the present record.

The undersigned also appreciates that it is not bound by the Kansas district court's holding in Morales. The undersigned nevertheless finds it persuasive. Cartwright is ultimately seeking

8

production of communications of the United States regarding the deliberations and recommendations of its agencies and the mental processes of its prosecutors. Id.; see also United States v. Vasquez, 258 F.R.D. 68, 72 (E.D.N.Y. 2009) (recognizing that (1) the United States has standing to challenge the subpoena served on a third-party to obtain discovery materials that would otherwise be protected from disclosure; and (2) regardless of standing, the court has an independent duty to consider whether the documents sought are privileged and whether the subpoena itself comports with the requirements of Rule 17); United States v. Raineri, 670 F.2d 702, 712 (7th Cir. 1982) ("A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests."). Notably, Cartwright has not asserted that United States communications regarding its prosecutorial decisions and deliberations is not privileged much less asserted an entitlement to such communications under Rule 16. It seems inappropriate and otherwise incongruous to allow Cartwright to sidestep this issue and otherwise circumvent the United States' claim of privilege by simply going to third-parties with whom the United States was communicating for production of these materials.

In any event, it appears to the undersigned that Cartwright's demands are not intended to obtain materials for presentation at trial but rather for discovery to bolster his motion to dismiss and that he apparently did not endeavor to obtain these materials from the United States directly pursuant to Rule 16. It does not escape notice that, while the subpoenas were apparently served on December 14, 2023, (Doc. No. 98), they were dated October 16, 2023, and called for production of third-parties' communications with their federal counterparts by December 21, 2023, or one day prior to

Cartwright's deadline for filing pretrial motions. (Doc. Nos. 97, 98-1, 98-2, and 98-3).[1]

In sum, the court finds that Part Two was reasonably calculated to obtain from discovery from third-parties in lieu of the United States under Rule 16. It bears repeating that Rule 17(c) subpoena is not a discovery device. Part Two is therefore quashed.

**B.      Subpoena Duces Tecum served on the Task Force**

In its reply, the United States acknowledges that Part Two of the subpoena is specific and arguably relevant to the case at hand. However, it maintains its objections to Parts One and Three. Specifically, with respect to Part Three, it asserts that "the request for any information indicating knowledge of such use by Cartwright" is overbroad and otherwise vague.

**1.      Part One - Request for Any and All Files or Documents**

Part One of the subpoena is troubling as it makes a blanket demand for "any and all files or documents including emails relating to Walter Cartwright III" without any temporal limits or any particular focus on specific documents. The undersigned therefore finds that Part One lacks the requisite specificity. Accordingly, Part One is quashed.

**2.      Part Two - Request for Files Specific to Chief Schmidt's Purported Use of Cartwright as a Confidential Informant**

Conversely, the undersigned finds Part Two described the documents being sought with adequate specificity. As the United States does not appear to take issue with the relevance of the documents requested in Part Two, the court will require the Task Force to comply with it. Whether these documents are ultimately admissible remains an open question that the Court will address as

---

[1] On December 21, 2023, Cartwright filed motions to continue trial and extend the December 22, 2023, deadline to file pretrial motion deadlines other than motions to continue or in limine. (Doc. Nos. 100 and 102). That same day he withdraw both motions. (Doc. Nos. 108, 109, and 111).

necessary at trial.

        **3.**    **Part Three - Request for Files Regarding the Task Force's Knowledge of Cartwright's Purported Work as Confidential Informant**

With respect to Part Three, it is apparent to the undersigned that Cartwright seeks materials from the Task Force demonstrating or evincing its awareness of Chief Schmidt's purported use of him as a confidential informant. The undersigned finds this demand to be sufficiently specific. As the relevance of this material does not appear to be in dispute, the undersigned shall require the Task Force to produce it. Whether such documentation is ultimately admissible will be addressed as necessary by the Court at trial.

    **C.**    **Subpoena Duces Tecum served on Chief Schmidt**

        **1.**    **Part One - Demand for Any and All Documentation Regarding Cartwright**

The undersigned finds Part One-the demand for any and all of Chief Schmidt's files, documents, emails, texts or Facebook messages or other information relating to Cartwright–lacks specificity. Put another way, absent some parameters regarding time and content, the demand is the sort of drift netting that courts have repeatedly frowned upon in the wake of Nixon. Finding that Part One lacks specificity, the undersigned orders it quashed.

        **2.**    **Part Two - Demand for Information Regarding Chief Schmidt's use of Cartwright as a Confidential Information and Cartwright's Authorization from Chief Schmidt to Purchase Controlled Substances**

In its reply, the United States acknowledges that Part Two of the subpoena is specific and arguably relevant to the case at hand. The undersigned agrees, and finds that the demand in Part Two is sufficiently specific. As the United States does not appear to dispute the relevance of the documents described in Part Two, the court will require Chief Schmidt to comply with Part Two.

Whether these documents are ultimately admissible will be addressed at trial by the Court.

### 3. Part Three - Demand for Chief Schmidt's Communications with Federal Prosecutors and Agents Regarding the Initiation of the Instant Case

The undersigned quashes Part Three for the same reasons it quashed a similar demand made upon State's Attorney Larson. This demand does not appear calculated to obtain evidence for use at trial but rather to obtain discovery in the hopes that it will bolster the claim of prosecutorial misconduct made by Cartwright in his Motion to Dismiss. This is not Rule 17's purpose. Perhaps Cartwright believes that this demand serves a dual purpose of bolstering his claim and obtaining evidence for use of trial. This begs the question whether the Court will be permit Cartwright continue down the prosecutorial misconduct path at trial if it denies his motion to dismiss on the basis of prosecutorial misconduct.

### IV.    CONCLUSION

The United States' Motion to Quash (Doc. No. 98) is **GRANTED IN PART AND DENIED IN PART**. It is **ORDERED**:

(1) The subpoena duces tecum served upon State's Attorney Larson (Doc. No. 98-1) **QUASHED** in its entirety.

(2) The subpoena duces tecum served upon the Task Force (Doc. No. 98-2) is **QUASHED IN PART**. Part One of the subpoena is **QUASHED**. The Task Force shall comply with Partes Two and Three of the Subpoena Duces Tecum and produce the documents/information requested at the Ward County State's Attorney s office by 11:45 AM on January 5, 2024. If the Task Force is not in possession of any documents/information responsive to Parts Two and Three of the subpoena, then it should so advise.

(3) The subpoena duces tecum served upon Chief Schmidt (Doc. No. 98-3) is **QUASHED IN PART**. Parts One and Three of the subpoena are **QUASHED**. Chief Schmidt shall comply with Part Two of the subpoena and produce the documents/information requested at the Ward County State's Attorney's office by 11:45 AM on January 5, 2024. If Chief Schmidt is not in possession of any documents/information responsive to Part Two of the subpoena, then he should so advise.

Dated this 2nd day of January, 2024.

>  */s/ Clare R. Hochhalter*
>  Clare R. Hochhalter, Magistrate Judge
>  United States District Court