IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| United States of America,<br><br>                                        Plaintiff,<br><br>vs.<br><br>Walter William Cartwright, III,<br><br>                                        Defendant. | Case No. 1:22-cr-00081 |

## ORDER DENYING MOTION TO DISMISS

### INTRODUCTION

[¶ 1]   THIS MATTER comes before the Court on a Motion to Dismiss filed by the Defendant on December 21, 2023. Doc. No. 106. The United States filed a Response on January 1, 2024. Doc. No. 118. The Defendant filed a Reply on January 6, 2024. Doc. No. 134. Also before the Court is a second Motion to Dismiss filed by the Defendant on January 8, 2024. Doc. Nos. 134-1, 136. The United States filed a Response on January 12, 2024. Doc. No. 138. The Defendant did not file a Reply.

[¶ 2]   On January 4, 2024, the Defendant pled guilty to Count One of the Indictment. See Doc. No. 129. However, he reserved his right to have the Motion to Dismiss decided prior to sentencing. If it is denied, the Defendant agreed the ruling would be subject to the appeal waiver in the Plea Agreement. The Court deferred acceptance of the guilty plea and informed the parties it would indicate its position on acceptance of the plea in this Order.

[¶ 3]   For the reasons set forth below, the Motions to Dismiss are **DENIED** and the Defendant's guilty plea is accepted.

**DISCUSSION**

[¶ 4]     A single-count Indictment charges the Defendant with Possession of a Firearm by a Convicted Felon. Doc. No. 1. The Defendant argues the Indictment should be dismissed for numerous reasons. First, he argues there was an unnecessary delay in presenting the current Indictment to the grand jury. Second, the Defendant contends there was an unnecessary delay in bringing this case to trial. Third, the Defendant claims there was prosecutorial misconduct. Fourth, the Defendant contends the charge violates the Defendant's Second Amendment right to possess a firearm. Fifth, the Defendant argues North Dakota's definition of a firearm applies in this federal criminal action. Sixth, the Defendant avers there is no evidence he transported the firearm across state lines.

[¶ 5]     The United States argues (1) there was no unnecessary delay in brining the charge; (2) the delay for trial was justified under the Speedy Trial Act; (3) there was no violation of the Defendant's Sixth Amendment speedy trial rights; (4) there have been no Due Process violations under the Fifth or Fourteenth Amendments; (5) the Defendant failed to cite any authority to justify dismissal of an Indictment based on prosecutorial misconduct; (6) the charge does not violate the Defendant's Second Amendment rights to possess a firearm; and (7) the Defendant's request to apply state law and to dismiss based on no evidence of the Defendant transporting the firearm across state lines are both unsupported by any legal authority. The Court agrees with the United States and will address each issue in turn.

   I.     **Delay in Bringing the Charge**

[¶ 6]     The Defendant contends the Indictment should be dismissed under Rule 48 of the Federal Rules of Criminal Procedure because there was an unnecessary delay between the time the alleged criminal conduct occurred in August 2019, and to when the Indictment was filed on May 4, 2022,

claiming the United States waited over thirty-three months in total to bring this matter to the grand jury. The United States disputes this, arguing this rule only applies in post-arrest situations. This case, according to the United States, involves an original prosecution, dismissal without prejudice, an affirmance on appeal, and a timely reindictment.

[¶ 7] The Court has discretion to dismiss an Indictment if there is an unnecessary delay in "presenting a charge to a grand jury." Fed. R. Crim. P. 48(b)(1). This Rule "is clearly limited to post-arrest situations." United States v. Marion, 404 U.S. 307, 319 (1971); see also United States. v. Garner, 32 F.3d 1305, 1310 (8th Cir. 1994) (quoting the same).

[¶ 8] Even based on the Defendant's timeline, there was no unreasonable delay. According to the Defendant, he was arrested on August 7, 2019. Doc. No. 107, p. 2. He was charged by state authorities on August 8, 2019. Id. at pp. 2-3 (citing Ward County case number 51-2019-cr-01500). He was arraigned on September 12, 2019, and the criminal complaint was filed on September 20, 2019. Id. at p. 3. The Criminal Information was filed on November 22, 2019. Id. After COVID-19 pandemic delays to the state court trial, the state proceedings were ultimately dismissed on July 10, 2020. Id. at pp. 3-4. On October 7, 2020, the Defendant was Indicted federally. Id. at p. 4 (citing Doc. No. 1, case number 1:20-cr-180). Ultimately, that case was dismissed without prejudice on February 11, 2021. Id. The Eighth Circuit affirmed on January 27, 2022. Id. The Mandate was handed down on March 24, 2022. Id. The current Indictment was filed on May 4, 2022. Doc. No. 1.

[¶ 9] Looking at the totality of the circumstances, the Court concludes the delay in presenting the current Indictment to the grand jury was not unreasonable. There were significant matters that occurred between August 2019 and May 4, 2022, that reasonably delayed presenting the indictment to the grand jury, including the dismissal of the original indictment based upon the

Defendant's motion to dismiss and subsequent appeal. Less than two months passed between the issuance of the Mandate from the Eighth Circuit and the filing of the Indictment. The Defendant has failed to provide any basis in statute or caselaw that even suggests the timeline in this case is unreasonable.

## II.     Speedy Trial Act

[¶ 10]   The Defendant argues the Court should dismiss the Indictment for a violation of the Speedy Trial Act. The United States disputes this, arguing only twenty-two (22) days have elapsed under the Speedy Trial Act. The Court agrees with the United States.

[¶ 11]   As a general rule, "[u]nder the Speedy Trial Act, the time limit begins to run with the first Indictment." United States v. Dennis, 625 F.2d 782, 793 (8th Cir. 1980). However, "[w]here the first indictment is dismissed at the defendant's request, the time limitation begins to run anew with the reindictment." Id. Such is the case here.

[¶ 12]   In case number 1:20-cr-180, the Defendant filed a Motion to Dismiss the indictment on January 28, 2021. Case Number 1:20-cr-180, Doc. No. 29. The Court granted the motion in part and dismissed the Indictment without prejudice. Id. at Doc. No. 42. In the present case, the Defendant was reindicted on May 4, 2022. Doc. No. 1. Accordingly, the Court looks to May 4, 2022, as the starting point for calculation sunder the Speedy Trial Act. See Dennis, 625 F.2d at 793. But the Speedy Trial Act clock does not begin to tick until the Defendant's initial appearance in this district where the charges are filed. 18 U.S.C. § 3161(c). Once the Defendant has appeared on the charges in the district, trial must commence no earlier than thirty (30) days nor later than seventy (70) days after the initial appearance. The Defendant's initial appearance was on June 6, 2022. Doc. No. 9. Accordingly, the Speedy Trial clock began to run on June 6, 2022. See 18 U.S.C. § 3161(c).

[¶ 13]   Despite the requirements of holding the trial between thirty (30) and seventy (70) days from the arraignment, the Speedy Trial Act provides several exceptions to this general rule. See 18 U.S.C. § 3161(h). Relevant here, any time from the filing of a motion until its resolution is excludable. 18 U.S.C. § 3161(h)(1)(D) & (H). Additional excludable time occurs when the delay results "from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government," if the Court finds "the ends of justice served by [a continuance of trial] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

[¶ 14]   The Defendant's first appearance in this case was on June 6, 2022. Doc. No. 9. Trial was set for July 19, 2022. Doc. No. 13. On June 28, 2022, the Speedy Trial clock stopped because Defendant's prior counsel[1] filed a Motion to Continue Trial and the Defendant signed an Informed Consent to Continue. Doc. Nos. 22, 23; 18 U.S.C. § 3161(h)(1)(D). Twenty-two (22) days elapsed between the initial appearance and the filing of the Motion to Continue. The Court specifically found the ends of justice served by continuing trial outweighed the best interest of the public and defendant in a speedy trial and excluded all time until the new trial date of November 15, 2022. Doc. No. 24. A second Motion to Continue and Informed Consent to Continue were filed on October 12, 2022. Doc. Nos. 26, 27. The Court granted the motion, making the required "ends of justice" findings and reset trial for April 18, 2023. Doc. No. 28.

[¶ 15]   The Defendant then filed a Motion to Suppress on March 17, 2023. Doc. No. 40. On April 12, 2023, a Status Conference was held to discuss setting a hearing on the suppression motion. Doc. No. 47. On April 17, 2023, the Court *sua sponte* continued trial to allow adequate time for a

---

[1] The Defendant was represented by the Federal Public Defender's Office when this motion to continue was filed. See Doc. No. 22.

suppression hearing and excluded all time from the date of the order (April 17, 2023) to June 27, 2023, under 18 U.S.C. § 3161(h)(1)(D). Doc. No. 48.

[¶ 16] On April 19, 2023, the Defendant was appointed new counsel.[2] Doc. No. 53. The Defendant's new attorney filed a motion to continue the jury trial and suppression hearing on May 25, 2023. Doc. No. 59. The Defendant signed and filed a written waiver of speedy trial. Doc. No. 60. The Court made the required "ends of justice" findings and continued trial to September 12, 2023. Doc. No. 61. The suppression hearing was reset for August 18, 2023. Doc. No. 62. The Court denied the Motion to Suppress on September 6, 2023. Doc. No. 69.

[¶ 17] On September 7, 2023, a status conference was held to discuss the impending trial scheduled to begin September 12, 2023. Doc. No. 74. At the conference, the Court was informed the Defendant was refusing to discuss an amended plea agreement with Defense Counsel. The United States informed the Court of a text message it received from someone purporting to be the Defendant. The text message indicated the Defendant wished to proceed *pro se*. After conferring with counsel as to the best course of action, the United States proposed filing a Motion to Continue Trial, which it did after the hearing. Doc. No. 72. The Court granted the Motion, noting additional time was needed to determine if the Defendant should proceed *pro se*. Doc. No. 76. The Court made the required "ends of justice" findings and continued trial to January 9, 2024. Id.

[¶ 18] Based upon the Court's review of the record, each day from the filing of the first Motion to Continue until the new trial date has been properly excluded under 18 U.S.C. § 3161(h)(1)(D) or § 3161(h)(7). Because the time has been properly excluded only, twenty-two days have passed under the Speedy Trial Act. The Speedy Trial Act, however, only requires trial occur before

---

[2] Attorney Robert N. Quick replaced the Federal Public Defender's Office, who had previously requested to withdraw as counsel. See Doc. Nos. 50, 52, 53.

seventy (70) days have passed. 18 U.S.C. § 3161(c)(1). This leaves forty-eight (48) days remaining on the Speedy Trial clock. Accordingly, there has been no violation of the Speedy Trial Act.

### III. Sixth Amendment Right to Speedy Trial

[¶ 19]  The Defendant next argues his constitutional rights to a speedy trial have been violated given the length of delay in this case. The United States disagrees, arguing the Barker v. Wingo, 407 U.S. 514, 530 (1972), factors weigh in favor of finding no violation occurred. The Court agrees with the United States.

[¶ 20]  The Sixth Amendment provides criminal defendants a right to a speedy trial. U.S. Const. Amend. VI. Unlike the Speedy Trial Act, the constitutional right to a speedy trial attaches at the time of arrest or indictment, whichever is earlier. United States v. McGhee, 532 F.3d 733, 739 (8th Cir. 2008). The Court must balance the four Barker factors when considering a Sixth Amendment speedy trial claim: "(1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) prejudice to the defendant." Id. (quoting United States v. Shepard, 462 F.3d 847, 864 (8th Cir. 2006) (quoting in turn Barker, 407 U.S. at 530)). Delays approaching one year might be presumptively prejudicial, requiring the application of the Barker factors. McGhee, 532 F.3d at 739. Because the delay in this case is over a year, each of the Barker factors will be discussed in turn.

#### 1. Length of Delay

[¶ 21]  The United States concedes the delay in this case is weighs in Defendant's favor. The Defendant was arrested on the original Indictment on October 19, 2020,[3] and the current Motion to Dismiss was filed on December 21, 2023. This delay amounts to three (3) years and eighty-two (82) days. The Court finds this factor weighs in favor of the Defendant. See McGhee, 532 F.3d at

---

[3] The Defendant was indicted on this date in case number 1:20-cr-00180, Doc. No. 1.

739 ("A delay approaching a year may meet the threshold for presumptively prejudicial delay requiring application of the Barker factors.").

### 2. Reason for the Delay

[¶ 22] The reason for delay weighs against the Defendant. As discussed above, most of the delay is directly attributable to the Defendant's need for additional time for trial. Some delay was caused by the COVID-19 pandemic. See Case No. 1:20-cr-00180, Doc. No. 24. The delay caused by dismissal of the first Indictment was also due to the Defendant's Motion to dismiss. See United States v. Cartwright, 23 F.4th 1075, 1079 (8th Cir. 2022) (noting the Defendant argued for dismissal based on the U.S. Marshals' negligence in returning him to state custody). Therefore, this factor weighs against the Defendant. See Williams, 557 F.3d at 949 ("Delays which have been caused by the accused himself can not, of course, be complained of by him.").

### 3. Defendant's Assertion of his Speedy Trial Right

[¶ 23] The Defendant did not assert his right to a speedy trial until December 21, 2023, shortly before the January 9, 2024, trial date. He made little effort to assert his right to a speedy trial prior to the final trial date. See McGhee, 532 F.3d at 739 (noting the third factor to consider is the Defendant's assertion of his speedy trial right). The Defendant filed a *pro se* Motion to Dismiss Indictment based on his speedy trial rights on September 21, 2023. Doc. No. 85. However, because the Defendant was represented by counsel at the time he filed that motion, the Court denied it without prejudice. Doc. No. 87 (citing Untied States v. Pate, 754 F.3d 550, 553 (8th Cir. 2014); Abdullah v. United States, 240 F.3d 683, 686 (8th Cir. 2001)). As noted, Counsel did not file the instant Motion to Dismiss until December 21, 2023. Even if the Court considers the *pro se* motion under this factor, the Defendant did not assert this claim until almost three years after the original indictment in case number 1:20-cr-00180. As a result, this factor weighs against the Defendant.

### 4. Prejudice to the Defendant

[¶ 24] The Defendant argues he suffered prejudice, but fails to provide an adequate explanation how he has been prejudiced by the delay. The Eighth Circuit "has recognized that 'unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including 'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence.'" McGhee, 532 F.3d at 740 (quoting Doggett v. United States, 505 U.S. 647, 654 (1992)). In addition, during much of the delay in this case, the Defendant was serving a North Dakota state court sentence unrelated to this case where he spent approximately 11 months in custody. See North Dakota v. Cartwright, 51-2020-CR-01015, Index # 25, 26. The Defendant has also failed to show how his defense may have been impaired by the delay. Given the Defendant's failure to articulate any actual prejudice, this factor weighs against the Defendant. See McGhee, 532 F.3d at 740 (finding prejudice weighed against the defendant because the defendant failed to point to any actual prejudice, his pretrial incarceration was due to his own acts, and he did not indicate any impairment of his defense).

### 5. Conclusion as to Speedy Trial Violation

[¶ 25] The only factor weighing in favor of the Defendant is the length of the delay. Because the reason for the delay, the Defendant's failure to assert his right to a speedy trial, and failure to show any actual prejudice all weigh against the Defendant, this Court finds there has been no violation of the Defendant's Sixth Amendment right to a speedy trial. His motion in this respect is **DENIED**.

### IV.  Due Process

[¶ 26] The Defendant claims the delay in bringing his case trial was unjustified under the Due Process Clause of the Fifth Amendment. The United States argues there was no Due Process

violation because the delay was largely attributed to the Defendant. The Court agrees with the United States.

[¶ 27] The Court finds United States v. Evans instructive. 2017 WL 1047254 (D. Minn. Mar. 17, 2017). In Evans, the defendant claimed his Due Process rights were violated because he was prejudicially confined in a county jail more restrictive than a federal prison, which impaired both his defense and mental health. Id. at *1-2. The court reviewed the defendant's Due Process claim by looking at the reasons for the delay and resulting prejudice. Id. (citing United States v. Paul, 634 F.3d 668, 674-75 (2d Cir. 2011)). Because the delay was attributed to the defendant, his deteriorating relationship with his attorney, the justifiable concern about the defendant's competency, and that the prejudice was not "substantial and demonstrable" to the extent requiring fundamental principles of fairness to conclude his rights were violated, the defendant's due process violation claim failed. Id.

[¶ 28] This case is persuasive here. The delay here was largely caused by the Defendant's requests and Motion to Dismiss. He also had difficulty maintaining a working relationship with counsel throughout the two proceedings, having gone through multiple attorneys. He has also failed to articulate any prejudice resulting from the delay. Due to all of this, the Defendant has failed to show his Fifth Amendment Due Process rights were violated. Accordingly, the Defendant's Motion to Dismiss on this ground is **DENIED**.

### V. Prosecutorial Misconduct

[¶ 29] The Defendant argues there was prosecutorial misconduct in charging him because in State Court, an inoperable firearm is insufficient to show he was a felon in possession of a firearm. The Defendant has not provided any case or statute suggesting such action is misconduct. The United States argues it is not unusual for state and federal laws to differ and for the federal government to

prosecute a crime that may not be criminal under state law. The Court sees no reason to consider this claim. The United States charged the Defendant with being a felon in possession of a firearm in violation of federal law. The Defendant has now pled guilty to this crime. The fact the Defendant could not be charged in State Court does not rise to the level of prosecutorial misconduct on the part of the United States.

### VI.  Second Amendment Right to Possess a Firearm

[¶ 30] The Defendant next argues the Second Amendment prohibits the United States from criminalizing his possession of the firearm in question in this case. He thus levies a challenge to 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The United States argues the prohibition is valid under the framework set forth in New York Rifle & Pistol Association, Inc. v. Bruen, 597 U.S. 1 (2022). The Court agrees with the United States.

[¶ 31] In Bruen, the Supreme Court held law-abiding and responsible citizens have the right to carry a handgun outside of the home for self-defense. Id. at 10. In reaching this conclusion, the Court provided a framework in which the lower courts are to assess Second Amendment claims such as the Defendant's:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

Id. at 24 (quoting Konigsberg, 366 U.S. 36, 50, n.10 (1961). The Supreme Court further clarified the analysis has "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." Id. at 29. Self-defense is the "central component." Id. The Court looks to whether there was an analogical regulation at the time the Second Amendment was ratified. Id. at 28-29. Indeed, "like all analogical reasoning, determining whether a historical regulation is a

proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" Id. This "is neither a regulatory straightjacket nor a regulatory blank check." Id. at 30.

[¶ 32] Prior to Bruen, but consistent with its principles, the Eighth Circuit has repeatedly rejected facial challenges to the constitutionality of Section 922(g)(1). See United States v. Woolsey, 759 F.3d 905, 909 (8th Cir. 2014); United States v. Joos, 638 F.3d 581, 586 (8th Cir. 2011); United States v. Seay, 620 F.3d at 924; United States v. Irish, 285 F. App'x. 326, 327 (8th Cir. 2008). Likewise, the Eighth Circuit has also rejected every as-applied challenge to Section 922(g)(1). See United States v. Williams, 24 F.4th 1209, 1211 (8th Cir. 2022); see also United States v. Hughley, 691 F. App'x 278, 279-80 (8th Cir. 2017); United States v. Siegrist, 595 F. App'x 666, 667-68 (8th Cir. 2015); Woosley, 759 F.3d at 909; United States v. Brown, 436 F. App'x 725, 726 (8th Cir. 2011).

[¶ 33] With that in mind, the Court concludes the Second Amendment does not bar the prosecution of the Defendant for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The Second Amendment states, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. As noted in Bruen, this protects "law abiding" citizens' rights. Bruen, 597 U.S. at 29.

[¶ 34] The Court does not need to consider to the historical analogue analysis because the Defendant is a convicted felon, meaning is not a law-abiding citizen. As noted in District of Columbia v. Heller, the "most famous" legal scholar of the Second Amendment "was the judge and professor Thomas Cooley, who wrote a massively popular 1868 Treatise on Constitutional Limitations." 554 U.S 570, 616 (2008). In that treatise, Cooley discussed the Second Amendment stating the Second Amendment cannot encompass the entire population. Thomas M. Cooley, A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union, 28-29 (1st ed. 1868). According to Cooley, "[c]ertain classes have been

almost universally excluded" from possessing firearm, including "the felon, on obvious grounds." Id. Indeed, felons have historically been excluded from "exercising the elective franchise" and other related "political rights," including "the right to bear arms." Akhil Reed Amar, The Bill of Rights 48 (1998). Accordingly, felons fall outside the scope of the Second Amendment's protection of the right of law-abiding and responsible citizens' right to possess firearms. A comprehensive historical analysis is, therefore, unnecessary. Accordingly, the Defendant's Motion to Dismiss on Second Amendment grounds is **DENIED**.

### VII. Application of State Law and Transportation of Firearm

[¶ 35] The Defendant claims North Dakota's definition of firearm should govern this case. The United States asks the Court to deny this motion because it has no basis in law. The Court agrees with the United States. North Dakota law does not control the federal definition of a firearm. The Defendant has failed to show any caselaw or statute to give this Court authority to look to North Dakota law when considering the firearm. His Motion to Dismiss in this respect is, therefore, **DENIED**.

### VIII. Surplus Language in the Indictment

[¶ 36] The Defendant argues the addition of "and ammunition" in the Indictment requires dismissal because he did not possess ammunition during the timeframe alleged in the Indictment. According to the Defendant, the use of the conjunctive "and" requires the United States to prove the Defendant possessed both a firearm and ammunition. The United States argues the Court can ignore the inclusion of ammunition because the Defendant would still be guilty of violating Section 922(g)(1) by possessing the firearm. The Court agrees with the United States.

[¶ 37] The Court ruled on this issue at the change of plea hearing. "A court may ignore independent and unnecessary allegations in an indictment." United States. v McIntosh, 23 F.3d

1454, 1457 (8th Cir. 1994). In the event the additional language is unnecessary to prove a violation of the statute, the additional language is mere surplusage and may be disregarded so long as the remaining allegations are sufficient to charge the crime. Id. Likewise, if the court-imposed amendment only narrows the charge against a defendant, it does not need to be re-presented to the grand jury. Salinger v. United States, 272 U.S 542, 548-49 (1926). In addition, if this case were to go to trial, it would be "appropriate for the district court to instruct the jury in the disjunctive form used in the statute, because proof of any one of the violations charged conjunctively in the indictment will sustain a conviction." United States v. Urkevich, 408 F.3d 1031, 1036 (8th Cir. 2005) (cleaned up).

[¶ 38] Here the inclusion of "and ammunition" is mere surplusage and may be stricken from the Indictment without requiring a superseding indictment. McIntosh, 23 F.3d at 1457 (court may ignore surplusage); Salinger, 272 U.S. at 548-49 (superseding indictment unnecessary if amendment narrows the charge). In addition, the conjunctive "and" may be disregarded because proof the Defendant only possessed the firearm would sustain a conviction. Urkevich, 408 F.3d at 1036 ("[P]roof of any one of the violations charged conjunctively in the indictment will sustain a conviction."). Accordingly, the Defendant's Motion to Dismiss for surplus language in the Indictment is **DENIED**.

## CONCLUSION

[¶ 39] The Court has considered the remaining arguments and concludes they are either without merit or unnecessary for consideration. Accordingly, for the reasons set forth above, the Defendant's Motions to Dismiss are **DENIED**. As indicated at the change of plea hearing, the Court now accepts the plea made on January 4, 2024, and the Defendant is adjudged guilty of Count One of the Indictment charging him with Possession of a Firearm by a Convicted Felon, in

violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). The Court reminds the Defendant he agreed at his change of plea hearing that any adverse ruling on his Motions to Dismiss will be subject to the appeal waiver found at paragraph 22 of the Plea Agreement.

[¶ 40]  **IT IS SO ORDERED.**

DATED February 28, 2024.

Daniel M. Traynor, District Judge
United States District Court